UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELIZABETH KORCZ,      } | |
|  } | |
|  Petitioner,      } | |
|  } | |
| v.      } | Case No.: 2:23-cv-08002-RDP |
|  } | (2:19-cr-00193-RDP-JHE-1) |
| UNITED STATES OF AMERICA,      } | |
|  } | |
|  Respondent.      } | |

**MEMORANDUM OPINION**

Before the court is Petitioner Elizabeth Korcz's Amended Motion to Vacate, Set Aside, or Correct Sentence. (Doc. # 5).[1] The motion has been fully briefed.[2] (Docs. # 5; 8). After careful review, and for the reasons discussed below, the motion is due to be denied.

**I.    Background**

Petitioner Elizabeth Korcz was previously a licensed physician who operated a medical clinic with an in-house dispensary in Hoover, Alabama.[3] (Cr. Doc. # 89 at 3). Petitioner was the only licensed medical provider at the clinic, and while she had several employees, none were authorized to prescribe controlled substances. (*Id.*). As a licensed physician, Petitioner was authorized to prescribe controlled substances to patients, but only if the prescriptions were issued

---

[1] The court refers to documents filed in Petitioner's underlying criminal case (2:19-cr-00193-RDP-JHE-1) as (Cr. Doc. #). Documents cited as (Doc. #) refer to documents relating to the present action.

[2] The United States and Petitioner's counsel indicated on an April 18, 2023 conference call that this matter is fully briefed.

[3] The following facts are described in Petitioner's plea agreement. (Cr. Doc. # 89). In the agreement, Petitioner stipulated that the facts stated in the agreement are substantially correct. (*Id.* at 6). Additionally, at her plea hearing on December 16, 2020, Petitioner affirmed that the facts contained in the agreement are true and correct and that she committed the actions alleged in the agreement. (Cr. Doc. # 177 at 14).

for a legitimate medical purpose and within the usual course of professional practice. (*Id.* at 4). Physicians are not authorized to pre-sign blank prescriptions for controlled substances, and prescriptions of that nature are not issued within the usual course of professional practice. (*Id.*).

In late 2015, Petitioner was traveling outside of Alabama and was not present at the clinic. (*Id.* at 5). During that time, Petitioner, with the agreement of several employees, knowingly prescribed controlled substances to patients outside of the course of professional practice in violation of the standard of care. (*Id.*). Specifically, certain patients received prescriptions for controlled substances, namely hydrocodone and oxycodone, without seeing Petitioner or any other licensed medical provider. (*Id.* at 4). Additionally, Petitioner authorized 1,926 pills of hydrocodone to be unlawfully dispensed by unlicensed employees in her absence. (*Id.* at 5).

On March 28, 2019, Petitioner was charged in a fifteen-count indictment with one count of conspiracy to unlawfully distribute and dispense controlled substances; one count of maintaining a drug-involved premises; five counts of unlawful distribution of a controlled substance; one count of conspiracy to commit healthcare fraud; and seven counts of healthcare fraud. (Cr. Doc. # 1 at 12-24). On December 16, 2020, Petitioner pled guilty to Count One—conspiracy to unlawfully distribute and dispense controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Cr. Doc. # 177).

In the plea agreement, Petitioner acknowledged that she read, understood, and approved the entire agreement; discussed the agreement with her attorney; and was satisfied with her attorney's representation. (Cr. Doc. # 89 at 17-18). She also certified that "no other promises or representations have been made to me by the prosecutor, or by anyone else, nor have any threats been made or force used to induce me to plead guilty." (*Id.* at 18).

Petitioner also agreed to waive her right to appeal and file a later lawsuit seeking post-conviction relief. (*Id.* at 9). Petitioner further agreed to the following specific waiver:

> I waive and give up my right to argue that: (1) the statute to which I am pleading guilty is unconstitutional, and (2) the admitted conduct does not fall within the scope of this statute.

(*Id.*). Petitioner reserved her right to contest a sentence imposed in excess of the applicable statutory maximum or guideline range, as well as the right to raise ineffective assistance of counsel claims. (*Id.* at 10).

On December 16, 2020 the court held a plea hearing. (Cr. Doc. # 177). At that hearing, Petitioner reaffirmed that she reviewed the plea agreement with her attorney and understood it; had adequate time to consult with her attorney about her case; and was fully satisfied with her attorney's representation. (*Id.* at 5-6). She also testified that she was not suffering from any mental or emotional impairment, physical injury, or illness that could affect her ability to understand the proceedings. (*Id.* at 5). The court explained the substantive rights that Petitioner would waive by pleading guilty, and Petitioner stated she understood. (*Id.* at 6-9). Additionally, Petitioner confirmed that she was not induced to plead guilty by any promise or assurance, no one threatened or coerced her in any way to cause her to plead guilty, and that she was pleading guilty because she was in fact guilty of the charge. (*Id.* at 19).

The court also explained the elements of the charge to which Petitioner pled guilty, stating:

> Count one charges you with violating 21 United States Code, Section 846 and 841(a)(1). Before you could be found guilty of that charge, the government would have to prove the following facts to a jury beyond a reasonable doubt:
>
> [F]irst, that two or more persons in some way or manner agreed to try to accomplish a shared and <u>unlawful</u> plan. And the plan was the distribution and dispensing of mixtures and substances containing detectable amounts of controlled substances . . .

>Second, the government would have to prove that you knew the unlawful purpose of the plan and willfully joined into the plan.
>
>And third, the government would have to prove . . . that the object of the unlawful plan was to distribute and dispense controlled substances[.]

(*Id.* at 9-10) (emphasis added). Petitioner affirmed that she understood the charge, and that the court's explanation was consistent with what her lawyer explained to her:

>THE COURT:  Do you understand these three elements that the government would have to prove to a jury?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  Do I need to review the specific controlled substances listed in the indictment with you to make sure you understand what those are?
>
>THE DEFENDANT:  No. We don't have to go over them.
>
>THE COURT:  All right. Do I need to define any of the terms I used any further for you?
>
>THE DEFENDANT:  No.  I understand fully.
>
>THE COURT:  All right. You've gone over with your lawyer what the government would have to prove in order to convict you of the charge?
>
>THE DEFENDANT: Yes.
>
>THE COURT:  And is what I just told you about the government's burden of proof consistent with what you and your lawyer discussed before you got on the videoconference today?
>
>THE DEFENDANT: Yes, Your Honor.
>
>THE COURT:  So I don't need to give you any further explanation. You understand this charge against you and what the government would have to prove in order to convict you of this charge?
>
>THE DEFENDANT:  Yes.
>
>THE COURT:  All right.

(*Id.* at 10-11).  Also, during her plea hearing, Petitioner admitted that the following recitation of facts contained in the factual basis of her plea agreement (Doc. # 89 at 2-6) was true and correct (Doc. # 177 at 14).

### II.     FACTUAL BASIS FOR PLEA

The government is prepared to prove, at a minimum, the following facts at the trial of this case:

#### A.     Relevant Individuals and Entities

The defendant, Elizabeth Korcz, M.D., was a physician licensed by the State of Alabama to practice medicine. She maintained a Controlled Substance Registration, which allowed her to prescribe controlled substances for a legitimate medical purpose and within the course of her professional medical practice. The defendant owned and operated Hoover Alt MD along with her husband and codefendant, Matthew Korcz. Hoover Alt MD was a medical clinic with an in-house dispensary (the "Korcz Dispensary"), operating in Hoover, Alabama.

The defendant was the sole physician at Hoover Alt MD. Matthew Korcz, who held no medical licensure or certification, was Hoover Alt MD's practice manager. The defendant employed her co-defendant Austin Haskew as a pharmacy technician. Matthew Korcz and Austin Haskew were often in charge of the Korcz Dispensary.

For much of the period covered in the Indictment, approximately June 2015 through May 2018, the defendant was the only licensed medical professional at Hoover Alt MD. Hoover Alt MD generally did not employ people licensed by the Alabama Board of Nursing.

#### B.     Relevant Controlled Substances

Hydrocodone and oxycodone are Schedule II controlled substances. Hydrocodone and oxycodone are opioids with a high abuse potential and risk of fatal overdose. A physician can prescribe hydrocodone or oxycodone, but such prescriptions must be issued for a legitimate medical purpose and within the usual course of professional practice. Pharmacies and dispensaries can similarly dispense prescriptions for hydrocodone or oxycodone, but only when the prescriptions are issued for a legitimate medical purpose and within the course of professional practice.

Physicians cannot pre-sign blank prescriptions for controlled substances, including hydrocodone and oxycodone. Pre-signed blank prescriptions are not issued within the usual course of professional practice.

### C.      Unlawful Prescribing and Dispensing

The defendant saw patients prior to initially prescribing them controlled substances. Sometimes, however, she was absent from Hoover Alt MD, and patients would receive prescriptions for hydrocodone without seeing the defendant or any other licensed medical provider. Some of the patients would receive hydrocodone directly from the Korcz dispensary in the defendant's absence, often from Matthew Korcz or Austin Haskew, outside the course of professional medical practice.

Between June 29, 2015, and July 12, 2015; between July 29, 2015, and August 3, 2015; and again on November 14, 2016, the defendant was out of Alabama. The defendant, in agreement with Matthew Korcz, Austin Haskew, and others, prescribed controlled substances to the following patients outside the course of professional practice in violation of the standard of care:

| Date | Patient | Drug | Quantity |
|---|---|---|---|
| 6/29/2015 | J.T. | Hydrocodone | 180 |
| 6/29/2015 | P.W. | Hydrocodone | 210 |
| 6/29/2015 | D.B. | Hydrocodone | 180 |
| 7/2/2015 | N.W. | Hydrocodone | 60 |
| 7/2/2015 | P.S. | Hydrocodone | 111 |
| 7/2/2015 | M.S. | Hydrocodone | 90 |
| 7/6/2015 | D.T. | Hydrocodone | 90 |
| 7/29/2015 | J.S. | Hydrocodone | 90 |
| 7/31/2015 | J.L. | Hydrocodone | 60 |
| 7/31/2015 | N.W. | Hydrocodone | 60 |
| 11/14/2016 | D.L. | Hydrocodone | 360 |
| 11/14/2016 | P.W. | Hydrocodone | 315 |
| 11/14/2016 | J.P. | Hydrocodone | 90 |

During these three periods, the defendant authorized 1,926 pills of hydrocodone 10/325 to be unlawfully dispensed by Austin Haskew and others at the Korcz Dispensary in her absence. The late-July 2015 dates of absence from the office were for Dr. Korcz's Father's funeral, and the 2016 date was for Dr. Korcz to attend her Mother's funeral.

Pursuant to her unlawful agreement with Matthew Korcz, Austin Haskew, and others to distribute and dispense controlled substances outside the usual course of professional practice, defendant obtained at least $46,181.79 in unlawful proceeds. The $46,181.79 seized from Renasant Bank Account number ending in * 1011, held in the name of Alt MD PC DBA Hoover Alt MD PC, is made up of proceeds of defendant's unlawful agreement.

> **The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

(Doc. # 89 at 2-6) (emphasis in original). The court found that Petitioner was fully competent and capable of entering an informed plea; she was aware of the nature of the charge and the consequences of her plea; and her guilty plea was knowing and voluntary and was supported by an independent factual basis. (*Id.* at 23). The court then accepted Petitioner's guilty plea. (*Id.*). On May 4, 2021, the court entered judgment against Petitioner and sentenced her to fifty-two (52) months imprisonment.[4] (Cr. Doc. # 132).

Petitioner appealed her conviction *pro se*. (Cr. Doc. # 143). She claimed that her conviction and sentence violated her right to due process and protection against cruel and unusual punishment because her health conditions made prison a "death sentence." (*Id.* at 1). She identified no other grounds for her appeal. (*Id.*). The Eleventh Circuit affirmed Petitioner's conviction on December 10, 2021. (Cr. Doc. # 188-1).

---

[4] Because Petitioner's husband was convicted as Petitioner's co-conspirator, and the couple has children with special needs, the court agreed to stagger their sentences, so that Petitioner's husband would serve his sentence before Petitioner. (Cr. Docs. # 173; 132). Because of this, Petitioner has not yet begun serving her sentence.

Generally, a petitioner must be in custody to seek relief under § 2255. *See, e.g., Hensley v. Municipal Court*, 411 U.S. 345 (1973). However, here, Petitioner's counsel filed the motion and has asked for a ruling prior to Petitioner actually reporting to the BOP. Further, "in custody" does not necessarily require that a defendant be physically confined, and a defendant released on bail or his own recognizance may nonetheless be "in custody" within the meaning of the habeas statutes. *Id.* at 349.

Here, even though Petitioner is not yet physically confined, she is on bond, still under the court's jurisdiction, and her future incarceration is inevitable. Therefore, there is no just reason to delay deciding Petitioner's motion, as doing so would simply postpone this action until Petitioner reports to BOP custody. *See id.* at 351-52 (finding petitioner was in custody because his incarceration was not "a speculative possibility that depends on a number of contingencies" or "a case where the unfolding of events may render the entire controversy academic," and delaying "would do no more than postpone [the] action until petitioner had begun service of his sentence"). Undoubtedly, Petitioner desires a ruling on her motion before she reports to the BOP.

In January 2023, Petitioner timely filed a Motion to Vacate, Set Aside, or Correct Sentence under § 2255 (Doc. # 1), and with leave of the court, filed an amended petition in March 2023. (Doc. # 5).

## II.     Standard of Review

Section 2255 authorizes a federal prisoner to move the court of conviction to vacate, set aside, or correct a sentence if the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a).  A motion is subject to heightened pleading requirements which mandate that the motion must specify all grounds for relief and state the facts supporting each ground. *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings. A § 2255 movant is not entitled to a hearing or post-conviction relief when her petition fails to state a cognizable claim or amounts only to conclusory allegations unsupported by specifics or contentions that, in the face of the record, are wholly incredible. *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

## III.    Discussion

Petitioner argues that the court should vacate her conviction and sentence because (1) she did not knowingly, voluntarily, and intelligently plead guilty; and (2) her conviction is invalid in light of the Supreme Court's decision in *Ruan v. United States,* 142 S. Ct. 2370 (2022) ("*Ruan I*"). (Doc. # 5 at 2). Both of these arguments fail.

### A. Petitioner's guilty plea was knowing, voluntary, and intelligent.

Petitioner claims that her guilty plea is invalid because she was coerced into pleading guilty and was not adequately informed of the elements of the charge against her. (Doc. # 5 at 5). Neither of these arguments provide a basis for invalidating Petitioner's plea.

A guilty plea is constitutionally valid only if it is voluntarily and intelligently made. *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "A plea is intelligent if the defendant was 'advised by competent counsel, [s]he was made aware of the nature of the charge against [her], and there was nothing to indicate that [s]he was incompetent or otherwise not in control of his mental facilities.'" *Amodeo v. United States*, 743 F. App'x 381, 384 (11th Cir. 2018) (per curiam) (citing *Brady*, 397 U.S. at 756). "A plea is voluntary if it is a product of the defendant's free will and not 'force, threats, or promises (other than promises in a plea agreement).'" *Id.* (citing Fed. R. Civ. P. 11(b)(2)).

When deciding whether a plea was knowing and voluntary, "the representations of the defendant at the plea hearing, as well as any finding made by the judge accepting the plea, 'constitute a formidable barrier in any subsequent collateral proceedings.'" *Phillips v. United States*, No. 21-11493-C, 2021 WL 5046189, at *1 (11th Cir. Aug. 17, 2021) (citing *Blackledge v. Allison*, 431 U.S. 63, 64 (1977)). There is a "strong presumption" that statements made during the plea colloquy are true. *Id.* (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *Id.* (citing *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam)).

### 1. Petitioner's guilty plea was voluntary.

In arguing that her plea was involuntary, Petitioner alleges that she "was confused and in a state of extreme fear while making her guilty plea" and was "repeatedly told by all involved that the State 'always wins' and that there was 'nothing she could do.'" (Doc. # 5 at 5) (citation and alterations omitted). She also claims she was told "that if she did not cooperate and plea, she would be incarcerated for twenty years and would not see her kids grow up." (*Id.*) (citation and alterations omitted). Petitioner claims that she plead guilty because she was "willing to do just about anything to avoid being incarcerated for such a long time." (*Id.*).

These allegations reveal nothing more than the inherent tradeoffs and incentives faced by any defendant who participates in the plea-bargaining process. The Supreme Court has "unequivocally" recognized the validity of extending leniency in exchange for pleading guilty and has expressly rejected the idea that a guilty plea is coerced simply because the defendant was motivated by the desire to avoid the risk of receiving a higher penalty if a conviction is obtained after trial. *Corbitt v. New Jersey*, 439 U.S. 212, 224 (1978); *Brady*, 397 U.S. at 750-51.

Essentially, Petitioner claims she did not voluntarily plead guilty because she was motivated by her concern that she might receive a greater sentence if she proceeded to trial. (Doc. # 5 at 5). Considering the charge against Petitioner—one count of conspiracy to unlawfully distribute and dispense controlled substances; one count of maintaining a drug-involved premises; five counts of unlawful distribution of a controlled substance; one count of conspiracy to commit healthcare fraud; and seven counts of healthcare fraud—Petitioner's concerns were warranted. (Cr. Doc. # 1). Without question, that is one reason she agreed to plead guilty to Count One rather than risking conviction of all fifteen counts in the Indictment. That rational decision simply does not render her plea involuntary. *See Corbitt*, 439 U.S. at 224; *Brady*, 397 U.S. at 750-51.

## 2. Petitioner's plea was knowing and intelligent.

Petitioner claims that her plea was not knowing or intelligent because she was not adequately advised of the elements of the charge, specifically the *mens rea* requirement the government would have to prove. She bases this claim on the Supreme Court's recent decision in *Ruan I*. 142 S. Ct. at 2374.

In *Ruan I*, the Court held that, to convict a doctor of unlawfully prescribing controlled substances under 21 U.S.C. § 841, the government must prove that the doctor knew the prescription was unauthorized.[5] *Id.* Petitioner argues that her guilty plea is invalid because she was not informed before pleading guilty that the Government would have to prove beyond a reasonable doubt that she knew her conduct was unauthorized. (Doc. # 5 at 7).

The problem with this argument is that Petitioner was not convicted for a direct violation § 841. Rather, she pled guilty under § 846 to *conspiring* to unlawfully distribute and dispense controlled substances. (Cr. Doc. # 132). Section 841 makes it unlawful for any person to knowingly and intentionally distribute or dispense a controlled substance without authorization. 21 U.S.C. §§ 841(a)(1). Section 846 criminalizes attempting or conspiring to violate § 841. 21 U.S.C. § 846. To establish a violation of § 846, the government must prove that: "(1) there was an agreement between two or more people to commit a crime (in this case, unlawfully dispensing controlled substances in violation of § 841(a)(1)); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *United States v. Azmat*, 805 F.3d 1018, 1035 (11th Cir. 2015). "[A] conviction under § 846 requires the jury to find that the defendants knew of the

---

[5] A prescription is only "authorized" under § 841 when a doctor issues it "for a legitimate medical purpose . . . in the usual course of his professional practice." 21 C.F.R. § 1306.04(a) (2021).

illegal nature of the scheme and agreed to participate in it." *United States v. Ruan*, 56 F.4th 1291, 1299 (11th Cir. 2023) ("*Ruan II*") (per curiam); *see Azmat*, 805 F.3d at 1035.

On remand from *Ruan I*, the Eleventh Circuit declined to overturn the defendant's conviction under § 846, even though the jury was incorrectly instructed on § 841. *Ruan II*, 56 F.4th at 1299. There, the jury was told that, to convict under § 846, the government must prove that: (1) two or more people in some way agreed to try and accomplish a shared unlawful plan; (2) the plan was to distribute or dispense controlled substances; and (3) the defendant knew the unlawful purpose of the plan and willfully joined it. *Id.* The Eleventh Circuit found that these instructions correctly stated the law and conveyed the proper *mens rea* standard, even after *Ruan I*. As our circuit court reasoned:

> Consider what a jury who voted to convict under § 846 would have to find. The jury would need to find that the defendant knew the illegal object of the conspiracy. For a defendant to know that the aim of their agreement was illegal in this context means that they would need to know both that (1) they were dispensing a controlled substance and (2) that they were doing so in an unauthorized manner. If the jury concluded that the defendant did not know either of these things, then they could not conclude the defendant knew the illegal object of the conspiracy and could not vote to convict.

*Id.* So, even though the jury was not correctly instructed on the *mens rea* standard under § 841, the conviction under § 846 was still valid because it required the jury to find that the defendant knew the illegal object of the conspiracy. *Id.*

Thus, *Ruan I* did not change the elements of § 846, and Petitioner was correctly advised of those elements before she plead guilty. At the change of plea hearing, the court informed Petitioner that, if the case went to trial, the government would have to prove the following elements beyond a reasonable doubt:

> [F]irst, that two or more persons in some way or manner agreed to try to accomplish a shared and unlawful plan. And the plan was the distribution and dispensing of

mixtures and substances containing detectable amounts of controlled substances . . .

Second, *the government would have to prove that you knew the unlawful purpose of the plan and willfully joined into the plan*.

And third, the government would have to prove . . . that the object of the unlawful plan was to distribute and dispense controlled substances[.]

(Cr. Doc. # 177 at 9-10) (emphasis added). The court's explanation of the elements of § 846 was virtually identical to the instructions given to the jury in *Ruan II*, and therefore the court correctly conveyed the *mens rea* requirement to Petitioner before accepting her guilty plea. *See Ruan II*, 56 F.4th at 1299.

Thus, the record shows that Petitioner's guilty plea was voluntary, knowing, and intelligent.

### B. Petitioner may not use *Ruan I* to challenge the sufficiency of the evidence against her at this stage.

Petitioner also argues that her conviction must be vacated in light of *Ruan I* because "[t]he government would not have been able to prove that Petitioner conspired to knowingly or intentionally distribute or dispense a controlled substance in violation of § 841." (Doc. # 5 at 7). However, Petitioner waived the right to challenge the sufficiency of the evidence against her by pleading guilty and by failing to raise this argument on direct appeal. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam); *Bousley*, 523 U.S. at 622; *Lynn*, 365 F.3d at 1234.

#### 1. Petitioner waived the right to challenge the sufficiency of the evidence against her.

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Wilson*, 962 F.2d at 997. By pleading guilty, Petitioner implicitly waived her right to challenge the sufficiency of the evidence supporting her conviction. *See id.* Moreover,

in the plea agreement, Petitioner explicitly waived her right to argue that the conduct admitted in the plea agreement does not fall within the scope of § 846. (Cr. Doc. # 89 at 9). Therefore, Petitioner waived this claim.

  **2. Because Petitioner did not challenge the sufficiency of the evidence against her on direct appeal, her claim is barred by the procedural default rule.**

Generally, a petitioner must raise an available challenge to a criminal conviction or sentence on direct appeal, otherwise the petitioner is barred from presenting that claim in a § 2255 motion. *Lynn*, 365 F.3d at 1234. A petitioner may avoid procedural default only by demonstrating either (1) cause for the default and actual prejudice; or (2) actual innocence. *Id.*; *Bousley*, 523 U.S. at 622.

Petitioner has not presented any evidence suggesting she is actually innocent, so she may only avoid default by demonstrating cause and prejudice. *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622. As a threshold matter, the court notes Petitioner did not address procedural default or cause and prejudice in her motion. That alone is enough to dispose of any challenge under this exception because Petitioner bears the burden of proof and has not met it. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (noting that the § 2255 Rules "mandate 'fact pleading' as opposed to 'notice pleading'"). But, in the interest of completeness, the court addresses cause and prejudice and explains why any such argument would fail.

  **a) Cause**

Petitioner claims that she could not have raised this argument on direct appeal because *Ruan I* had not yet been decided. (Doc. # 5 at 7). This is insufficient to establish cause.

One way a petitioner might establish cause for a default is by demonstrating that the defaulted claim was so novel it could not have been raised on direct appeal. *United States v. Bane*,

14

948 F.3d 1290, 1296-97 (11th Cir. 2020). A claim may be novel if it is based on a new rule of constitutional law, but not "when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility . . . or when the building blocks of the claim were available to counsel." *Id.* at 1297 (citations omitted). Generally, claims based purely on statutory interpretations are not novel because "[a]n argument for an interpretation of a statute that is consistent with its ordinary meaning and structure is not something that counsel would not be aware of or that courts would reject out of hand." *Id.* (quotation and alteration omitted).

Here, Petitioner's claim is not novel because it is based purely on statutory interpretation of § 841. *See id.* The Court's reasoning in *Ruan I* is similar to that in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). There, the Court held that, in a prosecution under 18 U.S.C. § 922(g), which prohibits felons from possessing firearms, the government must prove that the defendant knew he was a felon. *Id.* at 2200. Similarly, in *Ruan I*, the Court ruled that, in a prosecution under § 841, which prohibits dispensing controlled substances without authorization, the government must prove that the defendant knew his conduct was unauthorized. 142 S. Ct. at 2374.

The Eleventh Circuit has determined that *Rehaif* claims are based purely on statutory interpretation and thus are not "truly novel in the sense necessary to excuse procedural default." *United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020) (quotation omitted). The same principal applies here. Because Petitioner's *Ruan I* claim is based purely on "an interpretation of a statute that is consistent with its ordinary meaning," it "is not something that counsel would not be aware of or that courts would reject out of hand." *Bane*, 948 F.3d at 1297 (quotation and alteration omitted); *Ruan I*, 142 S. Ct. at 2374. As such, it is not novel, and Petitioner has not shown cause to excuse her failure to raise this argument on direct appeal. *See Innocent*, 977 F.3d at 1084.

### b) Prejudice

Furthermore, Petitioner cannot show prejudice because the record contains sufficient evidence to find that she conspired to unlawfully distribute controlled substances in violation of § 846.

As evidenced by the facts contained in Petitioner's plea agreement (which Petitioner admitted are true and correct), (Cr. Doc. # 177 at 14), Petitioner agreed with her co-conspirators to prescribe controlled substances to patients outside the course of professional practice in violation of the standard of care. (Cr. Doc. # 89 at 5). As a licensed physician, Petitioner was authorized to prescribe controlled substances to patients, but only if the prescriptions were issued for a legitimate medical purpose and within the usual course of professional practice. (*Id.* at 4). Physicians are not authorized to pre-sign blank prescriptions for controlled substances or to "delegate" to non-doctors the authority to write prescriptions for patients the physician has not even seen or evaluated. Such prescriptions are not issued within the usual course of professional practice. (*Id.*).

Despite this, Petitioner authorized unlicensed employees to issue prescriptions for controlled substances to patients without seeing Petitioner or any other licensed medical provider. (*Id.*). Additionally, Petitioner authorized 1,926 pills of hydrocodone, a controlled substance, to be unlawfully dispensed by non-licensed employees at her clinic's dispensary when she was absent. (*Id.* at 5). Petitioner acknowledged, under oath, that she knew the unlawful purpose of the plan and willfully joined into it. (Doc. # 177 at 9-10).

Thus, the record contains sufficient evidence to conclude that Petitioner violated § 846 by conspiring to unlawfully distribute and dispense controlled substances, and Petitioner therefore

cannot establish any actual prejudice to her case caused by her alleged misunderstanding of the elements of § 846.

**IV.    Conclusion**

For the reasons explained above, Petitioner is not entitled to relief under § 2255. Therefore, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. # 5) is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this April 18, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE